**David PERRY and John Neto, Plaintiffs-Appellants,**

**v.**

**MILK DRIVERS' AND DAIRY EMPLOY-EES' UNION, LOCAL 302, INTERNA-TIONAL BROTHERHOOD OF TEAM-STERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellee.**

**No. 79-4809.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1981.

Decided Sept. 17, 1981.

Daniel M. Siegel, Siegel, Meyers, Taub, Siegel & Friedman, Oakland, Cal., for plaintiffs-appellants.

Duane B. Beeson, Beeson, Tayer & Kovach, San Francisco, Cal., for defendant-appellee.

Before TANG and CANBY, Circuit Judges, and WILLIAMS,* District Judge.

DAVID W. WILLIAMS, District Judge:

Perry and Neto filed suit in district court asserting that the discipline imposed upon them by the International Brotherhood of Teamsters violated § 101(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(5) (hereinafter " § 411(a)(5)").[1] After a three-day court trial, the district court held that appellants' rights under § 411(a)(5) had not been violated. Appellants seek review of this decision.

Teamsters Local 302 represents employees of dairies in Alameda County, California, and has a collective bargaining agreement with Safeway Stores, Inc. Appellants belong to a faction of Local 302 strongly opposed to its incumbent leadership.

On July 14, 1977, and following the expiration of the previous collective bargaining agreement with Safeway, the membership of Local 302 voted overwhelmingly to reject Safeway's "final" offer and to go on strike. The members of the local were clearly instructed that no picketing and strike activities were permitted at any Safeway location other than the milk and ice cream plants in Alameda County without express prior approval.

Notwithstanding these instructions, appellants and others began picketing at Safeway's large distribution center in Richmond without notifying the union leadership. As a result, the members of the Teamster local, which represents employees at the distribution center, walked off their jobs. Picketing at the Richmond center continued for approximately three weeks. After one week, picketing was extended to the Safeway distribution center in Fremont and to various retail stores in the area. Perry and Neto were active in the leadership of this unauthorized picketing.

Upon learning of the unauthorized picketing, William Grami, a vice-president of the International Union, sent a telegram to Sullivan, Local 302's secretary-treasurer, demanding its immediate cessation. Sullivan made copies of this telegram and attempted to distribute them to the unauthorized picketers. Sullivan testified that Perry, upon receipt of the telegram, threatened Sullivan and Local 302's business agent, Pavon, and warned them not to return to the picket line at the Richmond distribution center. Sullivan later received telegrams from George Mock of the Western Conference of Teamsters and International President Fitzsimmons directing the picketing to stop. Sullivan notified each member of Local 302 of these instructions, but the orders went unheeded and the picketing continued unabated.

On July 29, Sullivan filed internal union charges against Perry and Neto, accusing them of violating provisions of the International Constitution by picketing and causing others to picket at the Richmond center. In addition, Perry was charged with "having threatened physical violence" against Sullivan and Pavon. No other picketing members of Local 302 were charged.

Pursuant to the Constitution of the International Union ("International Constitution"), the disciplinary proceedings were held before a trial panel composed of the Local 302 Executive Board. Circumstances led to the substitution of various members of the board, and the trial panel that eventually heard the charges consisted of seven persons, four of whom had run together with Sullivan on a slate opposed by Perry in

---

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

1. Section 411(a)(5) provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by an officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and by-laws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.

1976.[2] One of the four, Dresser, had been the object of prior internal union charges brought by Neto in early 1977 alleging undemocratic procedures at union meetings. Another, Jan Zones, was Sullivan's secretary and had typed the charges against appellants.

The trial took place on October 11, 1977. Perry's prior request to tape record the hearing was denied, but Zones made shorthand notes of the proceedings. Written statements were read by Sullivan and Pavon. Perry and Neto, each represented by fellow members, produced several witnesses on their behalf. Cross-examination was permitted. There was no dispute as to the appellants' participation in the unauthorized picketing, but Perry vigorously contested the charge that he threatened Sullivan with violence.

Following the hearing, the trial panel voted 4–3 to find both appellants guilty of the charge of picketing and causing others to picket the distribution center. For this charge, each was suspended from membership for twelve months and fined $225. The panel voted 5–1 (Dresser abstaining) to find Perry guilty of threatening Sullivan and Pavon, and Perry was suspended two more months and fined an additional $25. The suspensions had the effect of disqualifying appellants from being candidates in the Local 302 election scheduled for late 1979.

Appellants appealed to Teamsters Joint Council No. 7 requesting "a full retrial on these charges." A hearing was held before the Executive Board of the Joint Council on February 22, 1978, and was recorded verbatim. Written statements were again presented by Sullivan and Pavon, and appellants, again represented by fellow members, called several witnesses to testify on

their behalf. Cross-examination was allowed. The Board issued the following decision on April 3, 1978:

> The Joint Council Executive Board having duly considered the evidence and agreements of the parties; it is hereby found that the discipline imposed by Local 302 of Brothers Neto and Perry did not violate the International Constitution or By-Laws of Local 302. Accordingly, the appeals of Brothers Neto and Perry are denied.

A further appeal was taken to the General Executive Board of the International Union. This was heard on the basis of the transcript of the proceedings before the Joint Council. On July 12, 1978, the General Executive Board voted to affirm the decision of the Joint Council. Appellants filed suit in the district court on September 27, 1978, seeking injunctive relief and damages.

On appeal, Perry and Neto claim that: (1) the provisions of the International Constitution under which they were charged were so vague and overbroad as to fail to give them notice of the conduct prohibited; (2) that the refusal to permit Perry to record the proceedings before the Local 302 trial panel violated their right to a full and fair hearing; and (3) that the Local 302 trial panel was biased against them and had prejudged the merits of the charges, and thereby deprived them of a full and fair hearing. We affirm.

## I.

Appellants claim that the provisions they were accused of violating are vague and overbroad, and therefore failed to give them adequate notice of the conduct prohibited.[3] There is no merit to this contention.

---

**2.** Sullivan was replaced on the trial panel by a disinterested rank and file member pursuant to a provision of the International Constitution requiring the replacement of any secretary-treasurer who has preferred the charges.

**3.** Both Perry and Neto were charged with violating the following subsections of Article XIX, Section 6 of the International Constitution:

(1) Violation of any specific provision of the Constitution or failure to perform any of the duties specified thereunder.
(2) Violation of the oath of loyalty to the Local Union and the International Union.
(8) Any action which is disruptive of, or interferes with the performance or obligations of other members of Local Unions under collective bargaining agreements.

■ Section 411(a)(5)(A) prohibits the union from disciplining any member unless that member has been served with written specific charges. This provision does not, however, require union rules to specify every prohibited conduct with absolute precision. *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 243–45, 91 S.Ct. 609, 615–616, 28 L.Ed.2d 10 (1971). It is enough for the prohibited conduct to be at least reasonably ascertainable from the provisions of the union constitution allegedly violated. *Semancik v. UMW District 5*, 466 F.2d 144, 157 (3d Cir. 1972).

■ The provisions of the International Constitution under which appellants were charged were clearly adequate to apprise them that their conduct was prohibited. No unreasonable exercise of intellect is required to see that the instigation and maintenance of unauthorized picketing in defiance of instructions and telegrams from nearly every level of authority within the Union constitutes a violation of the International Constitution and an act of disloyalty. Nor can it be argued seriously that the maintenance of unauthorized picketing that causes other Teamster locals to walk off their jobs cannot reasonably be construed as an action that is disruptive of, or interferes with, the performance by other members and other locals of their obligations under their collective bargaining agreements. Finally, it is entirely reasonable to conclude that the prohibition of the abuse of fellow members encompasses threats of physical violence.

## II

Appellants' remaining contentions rest on the premise that the hearing before the Joint Council No. 7 was not a *de novo* trial and did not cure any defects that may have tainted the proceedings before the trial panel. The district court rejected this premise, concluding that the appellants received a full trial *de novo* before the Joint Council, and that the decision of that body constituted an independent determination of appellants' guilt. Perry and Neto argue that this conclusion is erroneous in light of the language of the Joint Council's decision.

■ The language of that decision admittedly does provide some support for the appellants' contention. Other factors, however, compel the opposite conclusion. First, appellants specifically requested "a full retrial on these charges" when they appealed to the Joint Council. There is no indication that this request was ever denied. Second, Article XIX, Section 2(b) of the International Constitution provides that appeals "shall be heard either on the record made before the trial tribunal or by a retrial, at the discretion of the body hearing the appeal." The record clearly shows that the Joint Council used the second alternative in hearing appellants' appeal, and retried the case with live witnesses and a new record. Third, there is no indication that either side was confined to presenting the evidence that had been introduced before the Local 302 trial panel. On the basis of these factors and its own review of the transcript of the Joint Council proceedings (which was not designated as part of the appellate record), the district court held that the decision of the Joint Council "must be understood as constituting an independent determination of guilt." We agree with this conclusion.

There is no claim that the members of the Joint Council were biased or had prejudged the appellants case, and the proceedings before it were recorded verbatim. As an untainted trial *de novo*, the proceedings before the Joint Council cured any prior deprivation of appellants' right to a full and fair hearing. *Rosario v. Ladies' Garment Cutters' Local 10*, 605 F.2d 1228, 1244–45 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).[4]

---

Perry was also charged with violating Subsection 6 prohibiting:

(6) Abuse of fellow members and officers by written or oral communication.

**4.** A fair trial *de novo* might not cure any special injury arising from the imposition of penalties during the period between the tainted proceedings and the trial *de novo*. *See Rosario v. Ladies' Garment Cutters' Local 10, supra*, 605 F.2d at 1244–45. However, no such injury is alleged, and none appears from the record.

In light of the foregoing, it is unnecessary to decide whether union members must be given the opportunity to record disciplinary hearings. See *Rosario v. Ladies' Garment Cutters' Local 10, supra,* 605 F.2d at 1240–42. *But see International Brotherhood of Boilermakers v. Hardeman, supra,* 401 U.S. at 246, n. 15, 91 S.Ct. at 617 n. 15 (1971). In addition, our decision in no way condones the adjudication of internal union charges at the hands of a trial panel apparently dominated by persons whose intra-union political interests would be directly served by the imposition of harsh disciplinary sanctions. *See Rosario v. Ladies' Garment Cutters Local 10, supra,* 605 F.2d at 1243; *Tincher v. Piasecki,* 520 F.2d 851, 855 (7th Cir. 1975); *Kiepura v. Local 1091, United Steelworkers,* 358 F.Supp. 987, 991 (N.D.Ill.1973). We only hold that the proceedings before the Joint Council in this case constituted an independent determination of appellants' guilt which cured any defects in the proceedings before the Local 302 trial panel.

AFFIRMED.

McKay, Circuit Judge, dissented and filed opinion.