867 F.2d 500
 130 L.R.R.M. (BNA) 2441, 110 Lab.Cas. P 10,924
 BUILDING MATERIAL AND DUMP TRUCK DRIVERS, LOCAL 420; and
International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Plaintiffs- Appellants,
v.
Oliver TRAWEEK and Gene McFadden, Defendants-Appellees,
v.
Gene TRUE; Edgar Smith; Richard Martino; Pete Gallegos;
Leo Pittman; Arthur Webb; and Clyde Craig,
Third-party-defendants-Appellants.
BUILDING MATERIAL AND DUMP TRUCK DRIVERS, LOCAL 420,
Plaintiff-Appellee,
and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Plaintiff,
v.
Richard MARTINO; Edgar Smith; and Gene True, Defendants,
and
Oliver Traweek and Gene McFadden,
Defendants-counterclaim-third-party- Plaintiffs-Appellants.
 Nos. 87-5744, 87-5749 and 87-5806.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 11, 1988.
Decided Jan. 25, 1989.
 
 George Pappy, Pappy and Davis, Los Angeles, Cal., for Local 420, and individual third-party plaintiffs-appellants-cross-appellees.
 Richard C. Leonard, and D. Steven Cameron, Levine, Schreiber and Leonard, Beverly Hills, Cal., for defendants-cross-appellants.
 Robert D. Vogel, Wohlner, Kaplon, Phillips, Vogel, Shelley & Young, Los Angeles, Cal., for Joint Council third-party defendant-appellant-cross-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before NELSON, REINHARDT and O'SCANNLAIN, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 These consolidated appeals involve a series of disputes between former union officers of Local 420, Oliver Traweek and Gene McFadden, ("appellees") and the individual current union officers of Local 420 ("the individual third-party defendants"); Local 420; the union's Joint Council; the International Union; and the United States Department of Labor. Traweek was the secretary-treasurer and chief executive officer of Local 420; McFadden was Local 420's vice president during all times relevant to the litigation. They were part of the seven member executive governing board of Local 420 (the "Local Board"). We affirm in part and reverse in part.
 
 The First Action
 
 2
 The first dispute involves an interpretation of the Local's by-laws and of the provisions of the International Union's Constitution regarding the necessary union approval for payment of a member's personal legal fees. Traweek went both to the Local Board and the membership to persuade them to pay for the legal defense of any union member charged with a crime. Traweek did this because Louie Andrini, Local 420's business agent, had been indicted for setting afire the Cove Development Co., a customer of a manufacturer against whom Local 420 was on strike. Additionally, unknown to the Local Board or the union membership, Traweek advanced $10,000 of his own money for Andrini's legal fees, to be refunded if the union paid the legal fees. The district court concluded that Traweek feared that he would be implicated in the arson if the union did not pay Andrini's personal legal fees. On February 17, 1981, Traweek went to the Local Board with his fees proposal. Instead of approving the motion, the board requested a legal opinion as to the legality of such a payment. Three days later Traweek went to the membership and submitted the same resolution for payment of legal expenses of union members. The membership ratified the proposal, subject to a legal opinion approving of the action.
 
 
 3
 On February 27, 1981, Traweek received the legal opinion, but did not reveal it either to the Local Board or to the membership. The parties dispute whether the legal opinion received actually interpreted union governing documents to authorize disbursement of union funds for Andrini's legal fees. The next week, appellees, as two of the persons authorized to sign for disbursement of union funds, paid Andrini's defense counsel $25,000 from union funds and Traweek received reimbursement of his personal monies. On March 10, March 18, and March 24, appellees paid Andrini's various defense attorneys out of union funds with three checks totaling an additional $30,000.
 
 
 4
 On March 12, 1981, the five members of the Local Board filed charges with the Joint Council[1] regarding the first check written by appellees. The other board members charged that appellees had expended union funds contrary to the union's by-laws and the International Constitution. The five members later amended the charges to include the second and third checks, but did not include the fourth check drawn on the union's accounts.
 
 
 5
 The Joint Council impaneled hearing officers and held a hearing on April 21, 1981 regarding the charges against Traweek and McFadden. Although appellees did not challenge the neutrality of the hearing members before the hearing, they now challenge the fairness of the hearing. The Joint Council's attorney, George Pappy, was also counsel for Local 420 until fired by Traweek. At the time of the hearing, Pappy was retained by several other member locals. Pappy did not usually attend any Joint Council hearing panel deliberations, but Pappy was present at the April 21 hearing. Traweek contends that Pappy was biased against him because Traweek selected another firm to represent Local 420, and that Pappy impermissibly maintained an undisclosed financial interest in the hearing because he knew that if Traweek were removed as a Local 420 officer, the Pappy law firm would again be retained by the Local.
 
 
 6
 On May 30, the Joint Council decided to require appellees to repay the $40,000 drawn from the Local's accounts and suspended them from the union for one month or until repayment, whichever occurred last. The next day the Local Board immediately appointed replacements for Traweek and McFadden. Pappy was rehired as Local 420's counsel. Traweek appealed to the International Union's president for a stay of the decision. The International rejected Traweek's petition.
 
 The Second Action
 
 7
 During this time, actions forming the second controversy took place. On March 1, after the membership vote but before union funds were disbursed, the five remaining officers of the Local Board held a special, secret meeting of the board. Neither Traweek nor McFadden were notified about the meeting. At this meeting the five members, constituting a majority of the board, decided not to contest the latest Labor Department challenge to the propriety of Local 420's November 1980 elections. This election challenge required rerun elections to be held for only three Local Board offices, including those held by Traweek and McFadden. The five members of the Local Board also passed a resolution prohibiting the expenditure of union funds for an individual member's legal fees without the approval of a majority of the board. Appellees did not know of these actions at least until after the first check was written.
 
 
 8
 On March 5, twenty union members filed charges against the five Local Board members regarding the secret meeting. Because the charges involved a majority of the members of the local's executive board, the Joint Council assumed original jurisdiction over the case. On April 28, one week after the hearing against Traweek and McFadden, a separate Joint Council hearing panel heard the improper secret meeting charges. The Joint Council never issued a decision concerning the alleged violations committed by the individual local board members.
 
 The Third Action
 
 9
 The third action also involves appellees' unauthorized disbursement of union funds but this action concerns charges brought regarding the fourth and final check drawn on the union's accounts (the $15,000 check). Instead of filing these charges with the Joint Council, as was done in the first action against appellees, other union members filed these charges with the Local Board on May 17, 1981. After the Joint Council's decision was rendered against Traweek, the Local Board notified Traweek that a Local Board disciplinary hearing would be held regarding the issuance of the fourth check. The Local Board gave Traweek only three days notice of the Local Board charges and hearing date, in violation of Article XIX, section 1(c) of the International Constitution, which requires ten days notice of a hearing and prohibits charging parties from presiding over the disciplinary hearings.
 
 
 10
 On June 12, the Local Board held a hearing concerning the fourth check, and a decision issued on June 17. The Board required Traweek to repay the last $15,000 withdrawn from the union account, fined him $5,000 as a penalty, and expelled him from the union for five years. The Local Board did not issue a decision regarding McFadden's punishment for signing the fourth check. In the meantime, the Labor Department set a date for the rerun elections for the three challenged Local 420 positions. On August 8, the Labor Department informed Traweek that he was ineligible to run in the rerun election because he was not a union member in good standing. Traweek immediately complained to the International about the Local Board's action, but the International stayed the appeal.[2]
 
 
 11
 Local 420 then filed suit against Traweek and McFadden pursuant to 29 U.S.C. Secs. 185 & 501(b) and California common law fraud statutes. Traweek filed a counterclaim against Local 420 claiming violations of 29 U.S.C. Sec. 411 and filed a third-party complaint against the Joint Council, the International, the Department of Labor[3] and individual third party defendants who were members of the newly constituted local board. Traweek contends that the third-party defendants violated his rights under the Landrum-Griffin Act, as codified at 29 U.S.C. Sec. 411, and that these parties entered into a conspiracy against appellees to oust them from the Local Board and to prevent them from running in the upcoming union rerun elections. Traweek and McFadden also claim back wages and penalties for violations of Cal.Labor Code Secs. 201 & 203.
 
 
 12
 The district court found for the appellants on the Sec. 501(b) and Sec. 185 claims and directed Traweek and McFadden to repay the amount of the checks written without authorization, totaling $55,000 plus interest. The district court also found that the individual third-party defendants entered into a conspiracy to deny Traweek and McFadden due process by holding a local board hearing regarding the charges concerning the fourth check and awarded Traweek and McFadden $10,000 each in punitive damages against each of the seven third-party defendants. The court set actual damages at $1 each for Traweek and McFadden against each individual third-party defendant. The district court also decided that appellees were not entitled to a penalty assessment for Local 420's wrongful withholding of pension funds and that Traweek and McFadden were not entitled to back wages and benefits. The district court concluded that no party is entitled to attorneys' fees.
 
 
 13
 The Local and the Joint Council appeal the denial of attorneys' fees and the Local joins with the third-party defendants in appealing the damages award to appellees. Traweek and McFadden cross-appeal the repayment judgment against them, the district court's award of actual damages, and the district court's failure to award punitive damages jointly and severally against the Local.
 
 DISCUSSION
 
 14
 I. THE COURT LACKS SUBJECT MATTER JURISDICTION TO CONSIDER THE CLAIMS BROUGHT BY THE UNION.
 
 
 15
 Appellees Traweek and McFadden raise on appeal the defense that the district court lacked subject matter jurisdiction over the union's suit. A party may question the existence of subject matter jurisdiction at any time during the proceedings. National Center for Immigrants' Rights v. I.N.S., 791 F.2d 1351, 1353 (9th Cir.1986). We review de novo the existence of subject matter jurisdiction; parties cannot stipulate to the presence of subject matter jurisdiction. First Nat'l Bank v. United States, 792 F.2d 954, 955 (9th Cir.1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); see Fed.R.Civ.P. 12(h)(3).
 
 
 16
 A. Jurisdiction Under Section 501(b).
 
 
 17
 Because of the federal policy of noninterference in the internal affairs of unions and labor matters and because Sec. 501(b) extends federal court jurisdiction, this court narrowly construes the scope of subject matter jurisdiction under Sec. 501(b). Phillips v. Osborne, 403 F.2d 826, 828 (9th Cir.1968); see also Adams-Lundy v. Association of Professional Flight Attendants (II), 844 F.2d 245, 249 (5th Cir.1988); Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1040 (D.C.Cir.1986). Appellees do not contest the possibility that the union may sue its former officers either in state court or under other federal statutory authority; they only challenge the court's subject matter jurisdiction pursuant to Sec. 501(b) or Sec. 185. See, e.g., Truck Drivers, Local 512 v. Baker, 473 F.Supp. 1120 (M.D.Fla.1979) (state property right involved in alleged conversion of union funds for officers' personal use; thus, organization was not left without a remedy).
 
 
 18
 Appellees first argue that Sec. 501(b) only confers jurisdiction if an individual union member files the suit. We agree. The literal language of the statute is clear--it authorizes an individual union member to bring suit if a union refuses or fails to sue. See Filippini v. Austin, 106 F.R.D. 425, 428 (C.D.Cal.1985). The condition precedent to the filing of a Sec. 501(b) suit requires proof that the union refuses or fails to sue upon a demand made by a union member. Flaherty v. Warehousemen, Local 334, 574 F.2d 484, 487 (9th Cir.1978); Adams-Lundy (II), 844 F.2d at 248. Here, by contrast, the union maintains a right to sue to recover its own funds; therefore it does not need the consent of the court or the operation of Sec. 501 to sue for recovery. In Phillips we discussed the policies and rationale behind the enactment of Sec. 501(b). There we noted that the concept of union democracy can be analogized to shareholder democracy, including the ability to bring derivative suits on behalf of the corporation. See id. at 831 & n. 8. Thus, in Sec. 501(b) actions, the individual member acts in a representative capacity for the benefit of the union and on behalf of the union. A plaintiff in a Sec. 501(b) action cannot seek to recover damages personally, but must seek a remedy for the union as a whole. Id. at 832.
 
 
 19
 Thus, Congress included a requirement that the individual member request leave of the court to bring suit because any money lost through financial impropriety does not belong to the union member personally. This statutory requirement offers proof that Congress intended that this remedy be available solely to individual union members. See Filippini, 106 F.R.D. at 430 (Sec. 501(b) was created by Congress to address abuse of position by union officers in situations where members have no effective remedy for such abuse except to petition the federal courts for help).
 
 
 20
 Appellants offer no support for their contention that lower courts are divided on this issue. Appellants' reliance on Weaver v. United Mine Workers of America, 492 F.2d 580 (D.C.Cir.1973) is misplaced. Weaver began as a proper derivative suit brought by individual union members. New elections were held during the pendency of the appeal. The elections resulted in the plaintiffs' faction gaining control of the union. Id. at 582-83. Because the new union officers were also plaintiffs in the suit, the district court was faced with a situation where the original plaintiffs were both union member plaintiffs and defendant representatives of the union. The result of the court's holding is that once a proper Sec. 501 suit is brought and federal court jurisdiction is created as a threshold matter, other plaintiffs can join the original plaintiff properly before the court, even if the additional parties might not have been able to initiate the suit. The issue posed by this case, whether a union standing alone can bring a Sec. 501 suit as an initial matter, was never addressed in Weaver.
 
 
 21
 We conclude that Filippini provides the better-reasoned and more persuasive interpretation of Sec. 501(b). The clear language of the statute does not contemplate a suit brought by a union, but only addresses the availability of a suit when the union refuses to sue. Our construction of the statute is consistent with the general principle, repeatedly reaffirmed by this court, that the scope of federal jurisdictional statutes should be construed narrowly. We reverse the district court's judgment against Traweek and McFadden to the extent that it was predicated on a violation of Sec. 501(b) because the union could not initiate the suit as a sole party plaintiff and therefore the district court lacked subject matter jurisdiction to consider the claim.
 
 
 22
 B. Federal Court Jurisdiction Under 29 U.S.C. Sec. 185.
 
 
 23
 Traweek and McFadden claim that neither jurisdiction nor an appropriate remedy is cognizable when a suit is brought by the union against an individual union member under Sec. 185. 29 U.S.C. Sec. 185 allows suit to be brought by a union for breach of a contract or collective bargaining agreement.[4] The union's suit for breach of the union's by-laws and constitution overcomes the first definitional hurdle present in Sec. 185 actions. The Supreme Court settled the question whether a union constitution is a "contract" for purposes of Sec. 185. See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 344, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1980). In Journeymen, the Court allowed an inter-union suit to be brought under Sec. 185 against a local to enforce the international union constitution. Id. at 620, 101 S.Ct. at 2549. Journeymen expressly declined to address whether an individual could bring suit for a breach of a union contract. See id. at 627 n. 16, 101 S.Ct. at 2553 n. 16. Additionally, the Court in Journeymen did not discuss whether a union could bring suit against its members.
 
 
 24
 This court broadened the principles outlined in Journeymen to allow an individual union member to sue a union for breach of a union constitution. Kinney v. International Bhd. of Elec. Workers, 669 F.2d 1222, 1229 (9th Cir.1981) (abandoning the "significant impact" jurisdictional prong but allowing union member to sue for breach of a union constitution. Kinney also did not discuss whether a union could bring suit against its members under Sec. 185. Thus, it is clear that a union can sue another union for a violation of the union constitution. See International Ass'n. of Machinists & Aerospace Workers v. International Longshoremen's & Warehousemen's Union, Local 13, 781 F.2d 685, 688 (9th Cir.1986); Journeymen, 452 U.S. at 624, 101 S.Ct. at 2551. A union can also bring suit under this section against an employer. See id. at 622, 101 S.Ct. at 2550 (citing cases). Additionally, a union member can sue the union for such violations. See Kinney, 669 F.2d at 1229. A union member also can sue an employer for a violation of the collective bargaining agreement. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). These litigant permutations are not at issue here; we must decide whether Sec. 185 contemplates a suit brought by a union against an individual union member for breach of internal union rules.
 
 
 25
 In discussing the legislative purpose behind the enactment of Sec. 185, the Supreme Court focused on the accountability of union organizations and employers, not union members. The Court stated that "apparently Congress was also concerned that unions be made legally accountable for agreements into which they entered themselves, an objective that itself would further stability among labor organizations." Journeymen, 452 U.S. at 624, 101 S.Ct. at 2551. The fact that this court has also allowed a union member to sue the union to ensure accountability is not of controlling significance.
 
 
 26
 Not every violation of a collective bargaining agreement or of a union constitution results in federal court jurisdiction. If we were to expand the jurisdictional scope of Sec. 185 in the manner advocated by appellants, then a union could sue an individual union member in federal court for any failure to comply with by-laws or the constitution. Thus, any time a union member failed to pay dues or committed a minor infraction of union rules, the federal courts would provide a forum in which to demand payment or to settle internal squabbles. Cf. Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F.Supp. 851, 861-62 (D.N.H.1981) ("The plain meaning of Sec. 301(b) is that damages actions of any kind may not lie against individual union members in federal court."). Clearly this possibility does not comport with the congressional intent behind Sec. 185.
 
 
 27
 The Court in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), indicated that Congress intended individual employees to be shielded from suits brought under Sec. 185. Reis concerned the ability of an employer to bring a damages action against union members for participating in a wildcat strike. As Reis details, the term "any person" was removed from the draft legislation and was replaced with the term "labor organization." See id. at 412-13, 101 S.Ct. at 1843. After analyzing the legislative history, the Court concluded that the "Senate passed [the revised] version of the bill, foreclosing individual damages liability in both Sec. 301 and Sec. 303 lawsuits." Id. at 414, 101 S.Ct. at 1844.
 
 
 28
 In deciding this issue we are influenced by the fact that appellants can point to no case where an individual union member has been held to be a proper defendant under Sec. 185. Appellants would have us interpret Journeymen 's jurisdictional analysis to require an exclusive focus on whether a contract exists under the terms of Sec. 185. Rather, we conclude that the primary focus in Reis was on Congress' intent to immunize individual members from a Sec. 185 suit. See Evangelista v. Inlandboatmen's Union, 777 F.2d 1390, 1400 (9th Cir.1985). The individual wildcat strikers in Reis violated the collective bargaining agreement. If the Court in Journeymen had interpreted the statute as appellants would have us do, the Court would have found the respondents liable based on the existence of a violation of a contract. Instead, the Court interpreted the statute, its "penumbra," and its legislative history to require protection of the individual union member. See Reis, 451 U.S. at 415, 101 S.Ct. at 1844.
 
 
 29
 Our conclusion in Kinney that an individual member can sue the union for a breach of a union constitution is not inconsistent. Kinney also expands the protection afforded the union member by allowing the individual to sue either the union or the employer for breach of a contract or a union constitution under which the member operates. Congressional intent to shield individual members from liability precludes an exclusive focus on the existence of a contract in this case. Therefore, the district court lacked subject matter jurisdiction over the Local's suit against Traweek and McFadden, and we reverse the district court's judgment against Traweek and McFadden. We find no jurisdiction on the claims filed by the local union. Under the circumstances present here, the pendent claims also should have been dismissed under the rule in United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); Aragon v. Federated Dep't Stores, Inc., 750 F.2d 1447, 1457-58 (9th Cir.1985).
 
 
 30
 II. THE COUNTERCLAIM.
 
 
 31
 A. Appellees' Standing To Bring Suit Under Section 411.
 
 
 32
 We now turn to the counterclaim. Appellants argue that appellees lack standing to maintain an action either against the Joint Council or against the individual third-party defendants and Local 420. The Council argues that at the time that appellees brought the counterclaim alleging discrimination in violation of Sec. 411, appellees stood validly suspended from the union because of the May 31 Joint Council decision. Thus, under the language of the statute and this court's decision in Brennan v. Local 357, Int'l Bhd. of Teamsters, 709 F.2d 611, 614 (9th Cir.1983), appellants contend that Traweek and McFadden were not "members" within the definition of 29 U.S.C. Sec. 402(o) (1982).
 
 
 33
 In addition, the Local and individual third party defendants contend that appellees are precluded from contesting the June 12 hearing because they stood validly suspended as of May 31. They argue that Traweek and McFadden were not members to whom union membership rights attached throughout the time of the local disciplinary proceedings. Under our interpretation of the statute and this court's precedents, we reject these contentions and hold that both Traweek and McFadden were properly union members entitled to bring suit against the Local and the Joint Council.[5]
 
 
 34
 In Brennan, the union member contended that he was a member within the meaning of Sec. 402(o ) at the time he was disciplined because (1) he tendered his delinquent fees and (2) all that remained was union processing of the monies. Thus, he was effectively a member by the time of the Local Board and the Council hearings. The court disagreed. The Local possessed the substantive discretion to determine whether Brennan met the requirements for membership at that point, and it could investigate whether he was working in another jurisdiction before it accepted his reinstatement money. Id. at 613. Thus Brennan was in the position of an applicant for union membership, to whom the rights conferred by Sec. 411 clearly do not apply. See Brennan, 709 F.2d at 616 (citing cases); see also Bullock v. Sweeney, 644 F.Supp. 507, 509 (N.D.Cal.1986), aff'd, 823 F.2d 554 (9th Cir.1987). The court distinguished the situation in Brennan from cases where unions fail to perform "ministerial acts necessary to give formal recognition to a person's status as a member." See id. at 614 (citing cases). Thus the court determined that Brennan was not a member in good standing at the time he was disciplined, allegedly in violation of the LMDRA. See id. at 613-14.
 
 
 35
 Additionally, the Brennan court emphasized the significance of the fact that Brennan did not contest the district court's finding that he was validly suspended for nonpayment of union dues. See id. at 615 (suggesting that such challenges are permissibly brought by expelled or suspended members under Sec. 411). A Sec. 411 suit may be maintained when a union member challenges a disciplinary action as imposed for improper purposes even if the action taken is supported by "some evidence" of guilt. See Bise v. International Bhd. of Elec. Workers, 618 F.2d 1299, 1304 & n. 5 (9th Cir.1979), cert. denied, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980). Repeated consideration of such Sec. 411 challenges brought by expelled or suspended members questioning the lawfulness of proceedings against them supports a finding of standing here. This circuit has entertained Sec. 411 suits concerning the propriety of charges brought or procedures used that resulted in suspensions or expulsions from union membership. See Wellman v. International Union of Operating Eng'rs, 812 F.2d 1204, 1205 (9th Cir.1987); Myers v. Affiliated Property Craftsmen, 667 F.2d 817, 821 (9th Cir.1982); Perry v. Milk Drivers' & Dairy Employees' Union, Local 302, 656 F.2d 536, 538-39 (9th Cir.1981); Burke v. International Bhd. of Boilermakers, 417 F.2d 1063 (9th Cir.1967). Other courts have considered challenges under Sec. 411 by expelled members without comment. See Stein v. Mutuel Clerks' Guild, Inc., 560 F.2d 486 (1st Cir.1977); Nelms v. United Ass'n of Journeymen, 405 F.2d 715 (5th Cir.1968).
 
 
 36
 Indeed, a contrary rule would insulate discriminatory and prohibited conduct from judicial review. Unions could silence dissent by expelling unruly members at unfair hearings in complete disregard of the purposes and prohibitions of Sec. 411. Thus, the Local Board's actions can be challenged by Traweek and McFadden under Sec. 411 because they questioned the validity of the disciplinary procedures employed against them.
 
 
 37
 B. Violations Of Sec. 411.
 
 
 38
 Traweek and McFadden encounter a more serious hurdle to relief, however, when we consider whether the actions challenged fall within the scope of Sec. 411's prohibitions. Congress did not prohibit all union actions against a member. "Congress desired to provide 'safeguards against improper disciplinary action,' not to outlaw union discipline. A union may 'otherwise discipline' a member, just as it may fine, suspend or expel him, if it has served him with written specific charges, has given him a reasonable time to prepare his defenses, and has afforded him a full and fair hearing." Morrissey v. National Maritime Union, 544 F.2d 19, 26 (2nd Cir.1976).
 
 
 39
 As a threshold matter, no disciplinary actions have been taken against McFadden and he has suffered no injury cognizable under Sec. 411. Therefore, all damages awarded to McFadden are vacated. As to Traweek, although he complains of a myriad of actions undertaken by the Local Board and other third-party defendants, most of these actions do not constitute violations of Sec. 411. The Act protects only basic union membership rights. See Kupau v. Yamamoto, 622 F.2d 449, 453 (9th Cir.1980); see also Wellman, 812 F.2d at 1206 (no violation of LMDRA by a technical internal rule violation that did not adversely affect member's due process rights). Therefore, any actions taken by the third party defendants to relieve Traweek of his union office are not remediable under Sec. 411. See NLRB v. Carpenters Local Union 35, 739 F.2d 479 (9th Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); Adams-Lundy v. Association of Professional Flight Attendants, 792 F.2d 1368, 1372 (5th Cir.1986); Lux v. Blackman, 546 F.2d 713 (7th Cir.1976) (union officers may be summarily removed regardless of the nonregularity of removal without violation of Sec. 411).
 
 
 40
 For instance, Sec. 411 was not violated by the secret executive board meeting to which Traweek and McFadden were not invited because it did not affect their membership rights. Additionally, Sec. 411 was not violated by any actions taken to oust Traweek or McFadden from their union positions. However, as admitted by counsel for the third-party defendants at oral argument, Sec. 411 was violated when the Local Board and the individual third party defendants did not provide Traweek, as a member of the union, with a full and fair hearing before imposing discipline. See e.g., International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971) (reasonable notice under Sec. 411(a)(5) is that which is outlined in union constitution); Perry v. International Longshoremen's Ass'n, 638 F.Supp. 1441 (S.D.N.Y.1986) (participation of two charging parties in the executive disciplinary council violated LMDRA standards for a full and fair hearing). Thus, the third-party defendants do not contest the $1 in compensatory damages awarded Traweek, only the award of punitive damages. Accordingly, we need not determine here whether or in what circumstances local officers acting in good faith are individually liable for Sec. 411 violations. See e.g., Waring v. International Longshoremen's Ass'n Local 1414, 665 F.Supp. 1576, 1581-82 (S.D.Ga.1987); Gordon v. Winpisinger, 581 F.Supp. 234, 240 (E.D.N.Y.1984).
 
 
 41
 This leaves only the question whether the Joint Council hearing violated the rights guaranteed by Sec. 411. The district court concluded that "Traweek and McFadden were given a full, fair and impartial hearing, and the decision of the Joint Council was validly and lawfully imposed. The physical presence of George Pappy, Esq. during the proceedings, does not vitiate these findings despite the heated claims of defendants regarding his role." Appellees argue that Pappy's undisclosed financial incentives, animosity toward Traweek and his role as legal advisor both to the Joint Council and to several member unions combined with the procedural irregularity of his attendance to create bad faith or impropriety. The crux of appellees' argument is that Pappy influenced the panel and acted as an advocate against them when at the most he should have been a neutral technical advisor. Appellees fall short of alleging facts sufficient to prove that the Joint Council acted in bad faith or that the hearing afforded to Traweek did not comport with the requirements of Sec. 411.
 
 
 42
 The President of the Joint Council took the normal steps to insure impartiality by appointing experienced hearing members without a stake in the proceedings. Neither Traweek nor McFadden challenged the impartiality of the hearing panel prior to its decision. Whether the panel's conduct in allowing Pappy to be present during the hearing and deliberations "demonstrates a conscious effort to stack the deck against [appellees]," Myers, 667 F.2d at 821, is most appropriately a question of fact and credibility to be decided by the trial court. Although appellees imply that by his unusual presence and unmentioned conflicts of interest, Pappy intended to sway the panel members to find against Traweek and McFadden, the district court did not err in failing to credit appellees' theory.
 
 
 43
 While appellees do point to evidence that calls into question Pappy's motives, they do not show that the attorney actually influenced the adjudicators or that the adjudicators were unfair. Cf. Myers, 667 F.2d at 821. Appellees failed to prove that the tribunal was biased or comprised of their political opponents. See Perry, 656 F.2d at 539 (Sec. 411 claim not established where no claim was advanced that members of the Joint Council were biased or had prejudged the appellant's case); Semancik v. United Mine Workers of America, 466 F.2d 144 (3d Cir.1972). The record contains evidence that (1) neither the hearing panel nor the Joint Council knew of Local 420's Pittman's assurance that Pappy would be rehired, (2) Pappy did not participate in questioning or commenting upon each side's case and (3) Pappy did not explicitly try to influence any hearing panel or council member as in Myers, 667 F.2d at 819. Thus, regardless of Pappy's participation, appellees have not shown that the Council conducted the hearing in bad faith or that Traweek's membership rights were violated in any way by the discipline imposed by the Joint Council. See Frye v. United Steelworkers of America, 767 F.2d 1216 (7th Cir.), cert. denied, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985).
 
 
 44
 This court's clearly established standard of review of a union's interpretation of its own governing documents and regulations is highly deferential, absent bad faith or special circumstances. Id.; see also Lucas v. Bechtel Corp., 800 F.2d 839, 851 (9th Cir.1986); Busch v. Givens, 627 F.2d 978, 981 (9th Cir.1980) (citing cases). Something more than the lack of a full and fair hearing is required to establish the bad faith necessary to disturb the union's interpretation of its constitution. See Motion Picture & Videotape Editors Guild, Local 776 v. International Sound Technicians, Local 695, 800 F.2d 973, 975-76 (9th Cir.1986), amended, 806 F.2d 1410 (9th Cir.1987).
 
 
 45
 Even if this court were to employ a less deferential standard to review the Joint Council's interpretation of the constitution, the Council's interpretation of its governing documents does not per se constitute a violation of Traweek's membership rights under Sec. 411. The union's construction of the constitutional provisions "should be considered and accorded some weight." Parish v. Legion, 450 F.2d 821, 827 (9th Cir.1971); see also Lucas, 800 F.2d at 851. Given Traweek's failure to reveal the legal counsel opinion requested by the membership and the Local Board and his prior receipt of the 1976 International's interpretation of the disputed section of the constitution, the union's position is a fair and consistent reading of its constitution. Therefore, the district court's holding that the Joint Council's hearing did not violate Traweek's rights under Sec. 411 is not clearly erroneous, regardless of the standard of review applied to the Joint Council's decision.
 
 
 46
 C. Damages Awarded.
 
 
 47
 The district court awarded actual damages to both Traweek and McFadden of $1 against each of the individual third-party defendants. Traweek and McFadden claim that the district court did not reach the compensatory damages issue, but they point to no evidence to indicate that the district court's $1 award constituted clear error. We have already reversed all damages awarded to McFadden. Because Traweek did establish that the Local Union and the individual third-party defendants violated his rights under Sec. 411 by improperly imposing discipline through the Local Board hearing, we affirm the district court's award of actual damages against each of the individual third-party defendants. The district court found that the individual third-party defendants "conspired to violate the due process rights of Traweek and McFadden by means other than through the normal process or a general membership election." Appellants argue that the district court impermissibly based its judgment for appellees on a finding of conspiracy. The first amended complaint for appellees' counterclaim does not allege a pendent state law claim of conspiracy--the only pendent claim alleged involves back wages under California law.
 
 
 48
 This court has held that "federal courts do not have jurisdiction to entertain claims of conspiracy under Sec. 301." Kaylor v. Crown Zellerbach, Inc., 643 F.2d 1362, 1368 (9th Cir.1981). The cases upon which the court in Kaylor relied preclude federal court jurisdiction "for claims of civil conspiracy in the labor relations field." Abrams v. Carrier Corp., 434 F.2d 1234, 1253 (2d Cir.1970) ("nor does conspiracy to violate either a labor contract or an individual's rights under the LMDRA suffice to vest the courts with jurisdiction pursuant to Sec. 301 of the LMRA or Sec. 102 of the LMDRA, respectively"), cert. denied, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); see also Russom v. Sears, Roebuck & Co., 558 F.2d 439, 441 n. 3 (8th Cir.1977). No pendent state law claim of conspiracy was pled in the counterclaim and an action for conspiracy is not contemplated within the scope of federal labor laws. Therefore, the district court lacked subject matter jurisdiction to consider a conspiracy claim under the provisions of Sec. 412.
 
 
 49
 We reverse the district court's decision to award punitive damages to Traweek. The district court's decision concluded that Traweek unlawfully removed funds from the union treasury to provide funds to an arsonist in order to protect himself against possible criminal indictment. Therefore the substantive actions taken by the local board members were justified fully; indeed, they may have had a legal duty to proceed against Traweek. The only complaint that the district court made against the local board members' conduct was that the local board members (1) gave Traweek insufficient notice of the hearing, and (2) that some of the executive board members who heard the charges also participated in their filing. These violations are procedural and technical in nature, and in this case they had no substantive consequences.
 
 
 50
 We see no evidence that the board members deliberately violated Traweek's procedural rights. The record is clear that they had good reason to proceed against Traweek. Under these circumstances, the district court's finding that the local officers showed "insidious intent and motive" is clearly erroneous. The finding is inconsistent with the district court's earlier conclusion that the Local Board had good reason to conclude that Traweek was converting funds and paying them to an arsonist in order to protect his own interests.
 
 
 51
 III. ATTORNEYS' FEES.
 
 
 52
 A. Denial of Attorneys' Fees Below.
 
 
 53
 The district court denied an award of attorneys' fees to either party. The Local and the Joint Council appeal this determination. However, because we have reversed the award in their favor, their attorneys' fee appeal is moot.
 
 
 54
 B. Sanctions on Appeal.
 
 
 55
 The Joint Council argues that the panel should impose double costs and attorneys' fees as sanctions against Traweek and McFadden pursuant to Fed.R.App.P. 38 and 28 U.S.C. Sec. 1912 (1982) (permitting imposition of fees for bringing a frivolous appeal). An appeal is frivolous if it is "wholly without merit." Wellman, 812 F.2d at 1206 (quoting Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 656 (9th Cir.1984) (per curiam)). Sanctions can also be imposed if the result of the appeal is obvious. See NLRB v. General Teamsters Local 439, 837 F.2d 888, 891 n. 4 (9th Cir.1988). However, Traweek and McFadden's appeal as to the Joint Council or any of the other defendants is not frivolous. Appellees' claims are supported by law or a good faith extension or modification of law. Therefore, we decline to award sanctions against appellees for appealing those portions of the judgment relating to the Joint Council.
 
 CONCLUSION
 
 56
 The judgment in favor of Traweek and McFadden is set aside except for the $1 compensatory damage award in favor of Traweek. The decision in favor of the local union directing the return of the union funds disbursed by Traweek and McFadden is also set aside for lack of subject matter jurisdiction. The local union is jointly liable for the $1 in damages awarded against each of the third-party defendants. The award of punitive damages to Traweek and McFadden is reversed.
 
 
 57
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 The Joint Council is the umbrella regional governing board for thirty-one union locals. Joint Council delegates, who are elected officers of the member locals, elect the officers of the Joint Council. Among other duties, the President of the Joint Council selects panels of Joint Council delegates to form hearing committees for intraunion disciplinary charges
 
 
 [2]
 The International had sent a letter to the Local Board requesting a response to Traweek's allegations, but Pappy, as Local 420's counsel, advised the International that the Local would soon be filing a federal court suit against the appellees for recovery of the funds. Pappy further advised the International that the filing of a court action required the International to refrain from investigations or hearings under Article XIX, section 1(f) of the Constitution, which states that "[n]o member or officer shall be required to stand trial on charges involving the same set of acts as to which he is facing criminal or civil trial until his final court appeal has been concluded."
 
 
 [3]
 All issues concerning the Labor Department have been bifurcated, to be adjudicated following this proceeding. No appeal has been taken from the decision to bifurcate. The district court requested cross motions for summary judgment regarding the International Union, and the court granted summary judgment in favor of the International. Appellees did not appeal the grant of summary judgment for the International
 
 
 [4]
 Section 185 as enacted states in relevant part: "(a) Suits for violation of contracts between an employer and a labor organization ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties,
 (b) Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization ... shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. Sec. 185 (1982).
 
 
 [5]
 Initially, Traweek began to challenge the actions taken by the individual third-party defendants through intraunion grievance procedures. At the time Traweek pursued intraunion remedies, the appeals proceedings did not appear inadequate or unavailable. See Bise v. International Bhd. of Elec. Workers, 618 F.2d 1299, 1304 & n. 5 (9th Cir.1979), cert. denied, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980). Traweek followed the plain language of the statute by attempting to exhaust intraunion remedies and continued his challenge in federal court after the union proceedings were stayed. 29 U.S.C. Sec. 411(a)(4) states that any union member bringing suit "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization." The district court retains discretion to require such exhaustion. See Clayton v. International Union, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981); see also Southeast Alaska Conservation Council, Inc. v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983). In light of the language of the statute and the strong preference for federal court noninterference in internal union affairs, it is reasonable for a union member in Traweek's position to attempt to exhaust internal union remedies before bringing suit