40 F.3d 1246
 150 L.R.R.M. (BNA) 2960
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank L. CANEZ, Plaintiff-Appellant,
v.
LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, Local Union
Number et al., Defendants-Appellees.
 Nos. 93-15653, 93-15986.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 17, 1994.
Decided Nov. 23, 1994.
As Amended on Denial of Rehearing and Rejection of
Suggestion for Rehearing En Banc June 12, 1995.
 
 Appeal from the United States District Court, for the District of Arizona, D.C. No. CV-90-01614-EHC; Earl H. Carroll, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before: LAY,* PREGERSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Frank Canez appeals the district court's grant of summary judgment and costs in favor of appellees, Laborers' International Union of North America, et al. Canez claims that his free speech and due process rights under Section 101 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Sec. 411 (1973), and his due process rights under the Uniform Local Union Constitution, were violated when he was removed from his position as Business Manager/Secretary-Treasurer of Local 383. We affirm.
 
 BACKGROUND
 
 3
 In 1986, Frank Canez was elected Business Manager/Secretary-Treasurer of Local 383. When he became Business Manager, he automatically became a trustee of the Laborers' Pension Fund. In February 1990, two events occurred that triggered the controversy in this case. First, Canez took a loan of $1500 from union funds and did not officially report it. Second, a letter, which Canez knew to be misleading, was sent to all the Pension Fund participants assuring them that over $50 million in losses to the Fund were recoverable. Barry Hinkle, then a lawyer for Local 383, played a role in both these events. Canez consulted Hinkle before taking the personal loan, and Hinkle advised Canez that taking the loan would be legal. On a separate occasion, when Canez asked Hinkle about the Pension Fund losses, Hinkle told him not to share his concerns with the union membership.
 
 
 4
 In May 1990, the International Union appointed David Jacobs, an auditor, to conduct an investigation into the financial practices of Local 383. He made a report to the Local Union Executive Board in which he revealed, among other things, that Canez had taken the personal loan. At a special meeting on August 8, 1990, the Executive Board voted to remove Canez from his position as Business Manager/Secretary-Treasurer, having been advised that Canez was automatically unbonded due to unauthorized expenditures, and that it would be illegal to let him retain his position. At a second meeting on August 10, 1990, the Board ratified its actions. Canez did not have formal, written notice of the meetings.
 
 
 5
 On October 3, 1990, the Executive Board filed formal charges against Canez. Every member of the Executive Board signed the charges. According to Article XII of the Uniform Local Union Constitution, usually a Trial Board, composed of members of the Executive Board, would hear the charges, and then the union membership would ratify the Board's decision. Because all the members of the Executive Board had signed the charges, the Board referred the matter to International's General President, pursuant to Article XII of the Local Constitution. The General President appointed a Hearing Panel of one party to hear the charges. The trial began on November 21, 1990 and lasted five days. Canez and counsel were present.
 
 
 6
 Meanwhile, Canez filed for a preliminary injunction in United States District Court on October 17, 1990. The court granted his motion on November 28, 1990, and he was reinstated. In February 1991, the Hearings Panel issued a final decision, adopted by the General Executive Board on February 11, 1991, recommending that Canez be removed from his official positions. It found that Canez had breached the trust of his office by failing to acknowledge the loan, but cleared him of seven other charges. On June 10, 1991, the Executive Board removed Canez from office.
 
 
 7
 After the hearing, the district court reviewed the preliminary injunction that it had granted Canez, decided that Canez had received due process, and lifted the injunction on June 5, 1991. After the case was transferred to a magistrate, each side filed a motion for summary judgment. The court granted the defendants' motion. Canez appeals.
 
 ANALYSIS
 
 8
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). When a party moves for summary judgment, the court must grant the motion "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Canez raises several issues on appeal.
 
 
 9
 A. The Free Speech Claim.
 
 
 10
 Canez contends that his speech rights, guaranteed under 29 U.S.C. 411(a)(2), section 101 of the LMRDA, were violated because he was dismissed from his position as Secretary-Treasurer for speaking out about the pension fund losses. Canez argues that the close timing of his remarks about the pension fund and of the audit which lead to his ousting supports an inference that he was improperly dismissed. He also notes that Hinkle told him not to speak to the membership about the pension fund losses.
 
 
 11
 Viewing the facts in the light most favorable to Canez, as we must in summary judgment analysis, Roberts v. Continental Insur. Co., 770 F.2d 853, 855 (9th Cir.1985), we agree with the district court and the defendants that Canez failed to provide enough facts from which a fact-finder reasonably could draw an inference that Canez was dismissed for his speech.
 
 
 12
 But even if Canez did have enough facts to support his argument that he was dismissed because he engaged in protected speech, he still would not be able to overcome a summary judgment motion. His claim of protected speech does not automatically immunize him from discipline on other grounds. Ferguson v. Int'l Ass'n of Bridge Workers, 854 F.2d 1169, 1175 (9th Cir.1988) (union members who engaged in leafleting and other protected speech can still be properly disciplined for "dual unionism").
 
 
 13
 In the two cases where we found that there was a possibility that the plaintiffs were wrongly disciplined for protected conduct, the reasons the superiors gave for the union members' discipline were questionable. See Bise, 618 F.2d at 1304 (implication that discipline was improperly imposed because charges against union members included conduct that was clearly permissible); Ornellas v. Oakley, 618 F.2d 1351 (9th Cir.1980) (whether accusations of misconduct are false is a material issue because it may suggest discipline was improperly imposed). However in Ferguson, 854 F.2d at 1174, where we upheld the union members' discipline, there was ample evidence that the union members acted subversively. Likewise, the record in this case indicates that Canez was properly ousted because of his conduct. We agree with the district court that Canez cannot defeat summary judgment on this claim because his conduct alone was enough to justify his dismissal.
 
 
 14
 B. Claims under the Local Constitution.
 
 
 15
 Canez contends that his right to due process under the Local Constitution was also violated. Alleged constitutional violations are cognizable in federal court under Section 301 of the LMRA, 29 U.S.C. Sec. 185 (1985), as potential contract violations. Woodell v. IBEW, Local 71, 502 U.S. 93 (1991).
 
 1. Timing of Hearing
 
 16
 First, Canez asserts that he should have had a full hearing before his dismissal on August 10, 1990. The Local Constitution provides for such a hearing in Article XII. We agree with the district court that we must defer to the General Executive Board's finding that the emergency action of the Executive Board was permissible under the Local Constitution. See Building Material and Dump Truck Drivers, Local 420 v. Martino, 867 F.2d 500, 511 (9th Cir.1989) (courts should be highly deferential to a union's interpretation of its own governing documents).
 
 
 17
 Next Appellant argues that he was entitled to a full hearing on the charges within thirty days of his dismissal. The General Executive Board agreed that Canez's full hearing came later than it should have. (E.R. 16, p 10). The Board also found, however, that "[b]ecause Canez was removed from office for misconduct, he suffered no injury by the Executive Board's failure to provide him a hearing on disciplinary charges within a reasonable period after his removal on August 8." (E.R. 16, p 19).
 
 
 18
 The question whether constitutional due process rights have been violated is not a results-oriented inquiry. Union members are entitled to due process whether or not they are guilty. Canez's rights under the Local Constitution were violated when he did not receive his hearing on time, even though he had been dismissed for misconduct. In some situations, the timing of a hearing could prove critical to a plaintiff. In this case, however, Canez has failed to suggest any kind of specific prejudice. We therefore agree with the district court that this issue does not need to be tried because Canez has failed to present any evidence to show that he suffered any harm.
 
 2. Trial Board of Local Members
 
 19
 Canez next contends that his Local constitutional rights were violated when Ramon Morales, then a member of the Executive Board, did not impanel a Trial Board to hear his case. We agree with the district court that this argument lacks merit. The Local Constitution provides that members of the Executive Board of the Local Union will constitute the Trial Board that hears charges against an officer. Uniform Local Union Constitution, Article XII, section 3. Members are disqualified if they are the charging party, or interested in the litigation. The Local Constitution further provides that "[w]here the entire Executive Board ... appears to be disqualified, the matter may be referred to the General President...." Id.
 
 
 20
 All the members of the Executive Board signed the charges against Canez. Canez argues that Morales, though he also signed the charges, was not "interested" because he did not take part in the hearings on October 8th and 10th. The Local Constitution is clear: Morales signed the charges and was therefore disqualified. He had no duty to impanel a Trial Board, and Canez's hearing was properly referred to International's President.
 
 3. Vote by Union Members
 
 21
 Canez claims that he had a right to have his charges voted on by the general union membership. Canez asserts that the Local Constitution provides a way for union leadership to bypass the general union membership by referring hearings to the General President. When the Trial Board conducts the hearing, the local union votes on its findings. Local Constitution, Article XII, section 6. When the case is referred to the General President, however, it may remain with the General Executive Board for "final decision and disposition." Id. section 3.
 
 
 22
 Canez brings his claim under 29 U.S.C. Sec. 185, claiming that he did not receive due process under the Local Constitution. But the process he protests is provided by the Local Constitution itself. Canez thus has no claim under Sec. 185.
 
 
 23
 C. Voting Rights under Sec. 411.
 
 
 24
 Alternatively, Canez argues that the right of union members to vote, guaranteed by 29 U.S.C. Sec. 411(a)(1), required a vote of the general membership on his discipline. The provision states: "Every member of a labor organization shall have equal rights and privileges ... to nominate candidates, to vote in elections or referendums ... subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. Sec. 411(a)(1).
 
 
 25
 The first issue is whether the union membership should have voted on the Local Executive Board action of August 10. Because the Hearings Panel found that the Board had properly acted in an emergency, its action was not subject to rules of Trial Board proceedings. Therefore there was no requirement of a general union membership vote.
 
 
 26
 Second, Canez challenges the Local Constitution itself. He asserts that the procedure by which charges are referred to the General President violates Sec. 411(a)(1) because it denies the union membership the right to vote on important issues.
 
 
 27
 None of the cases Canez relies on suggest that the union's procedure for charging officers violates Sec. 411. The Supreme Court has stated that the relevant inquiry is whether the voting procedure at issue is "reasonable." United Steelworkers of America v. Sadlowski, 457 U.S. 102, 111 (1982) (White, J., dissenting). Local's procedure for charging and trying officers is "reasonable" on its face because it allows the General President to step in when the Local membership is biased. None of the cases Canez cites challenges this common-sense view.
 
 
 28
 D. Exhaustion of Remedies.
 
 
 29
 29 U.S.C. Sec. 411(a)(4) requires that union members exhaust internal remedies "but not to exceed a four month lapse of time" before instituting legal proceedings. Appellant claims that he satisfied this requirement. We agree. In Ornellas v. Oakley, 618 F.2d 1351, 1354 (1980), we held that "a person has adequately exhausted her [intraunion] remedies where her remaining appeal within the union lies beyond a four month period."
 
 
 30
 The district court correctly stated that Canez had a duty under Article VIII of the International Constitution to appeal to the Regular Convention of the International Union. But Canez points out that the Regular Convention meeting following the General Executive Board's disposition in February 1991 was held in September 1991. Therefore, Canez did not need to appeal to the Convention because his next available appeal was more than four months away. Canez was properly before the district court.
 
 
 31
 E. Costs.
 
 
 32
 We review a district court's decision to award costs for abuse of discretion. Ass'n of Flight Attendants v. Horizon Air, 976 F.2d 541, 551 (9th Cir.1992). The issue is whether Canez is a "prevailing party" in the context of a Rule 54(b) motion for costs.
 
 
 33
 We find that the district court did not abuse its discretion when it failed to characterize Canez as the "prevailing party." If Canez had won permanent relief, he clearly would have been the "prevailing party." Though Canez did cause the defendants to alter their conduct, Hewitt v. Helms, 482 U.S. 755, 761 (1987), the change was only temporary, not a "resolution" of the dispute. See Texas State Teachers v. Garland Indep. School Dist., 489 U.S. 782, 783 (1989) (to be considered a "prevailing party," plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant") (emphasis added); Markham v. Int'l Ass'n of Bridge Workers, 901 F.2d 1022 (9th Cir.1990) (no costs awarded to plaintiffs who won a preliminary injunction for a hearing because they did not win a permanent dissolution of the trusteeship, and because the hearing would have occurred regardless of their actions).
 
 
 34
 Canez could have been the "prevailing party" despite not winning permanent relief if he had gained relief independently of his suit, making the injunction and any further pursuit of legal action unnecessary. Williams v. Alioto, 625 F.2d 845 (9th Cir.1980) (plaintiffs awarded attorney fees despite preliminary injunction being vacated because the relief they sought was achieved independently of them), cert. denied, 450 U.S. 1012 (1981). Canez, however, has yet to receive the relief he wants.
 
 
 35
 Finally, the district court did not need to explain its rationale for not awarding costs to Canez because he was not the "prevailing party." Trans Container Services v. Security Forwarders, Inc., 752 F.2d 483, 488 (9th Cir.1985) (trial court should state reasons for denying costs to the prevailing party).
 
 
 36
 To summarize, we affirm the district court on all issues except the exhaustion of remedies claim. Affirmed.
 
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3