**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO**

v.

**SPEAR, WILDERMAN, BORISH, ENDY, SPEAR & RUNCKEL, Charles T. Joyce, and Thomas W. Blackwell.**

No. CIV.A. 97–2438.

United States District Court,
E.D. Pennsylvania.

Feb. 20, 1998.

Stanley B. Gruber, Philadelphia, PA, Ernest L. Mathews, Jr., New York City, for Plaintiff.

Richard L. Bazelon, Philadelphia, PA, for Defendants.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiff International Longshoremen's Association, AFL–CIO ("ILA"), a labor organization, brought this action against the law firm of Spear, Wilderman, Borish, Endy, Spear & Runckel ("Spear Wilderman"), Charles Joyce ("Joyce"), who is a member of Spear Wilderman, and Thomas Blackwell, who is a former officer of ILA Local 1332, alleging violations of the Labor Management Reporting And Disclosure Act ("LMRDA") 29 U.S.C. § 501, the Labor Management Relations Act, 29 U.S.C. § 185, as well as state law claims of fraud, breach of contract, unjust enrichment and breach of fiduciary duties. Spear Wilderman and Joyce have moved to dismiss the complaint in its entirety, on the grounds that 1) § 501 does not confer federal subject matter jurisdiction over suits by labor organizations against individuals for breach of fiduciary duty; 2) private attorneys may not be held liable for breach of fiduciary duty under § 501; 3) liability of moving defendants under § 501 cannot be based on allegations of conspiracy with defendant Blackwell; 4) the remaining federal claim, against defendant Blackwell under 29 U.S.C. § 185, fails to state a claim, and; 5) after dismissing all the federal claims, this court should decline to exercise supplemental jurisdiction over the remaining state claims.[1]

I. *Background*

This lawsuit is the second action arising out of ILA's revocation of the charter of one of its Philadelphia—area affiliates, Local 1332. In September, 1995, after ILA notified Local 1332 that its charter was revoked for non-payment of dues, Local 1332 brought an action seeking to set aside the revocation.[2] Defendants Joyce and Spear Wilderman represented Local 1332 in that action, which was settled in February 1996. The settlement agreement provided, *inter alia,* that Local 1332's charter had been revoked effective September 25, 1995, and that Local 1332 would take necessary steps to transfer title of the local's property to ILA or designated trustees.

In the current action, ILA alleges that during the pendency of the first action, on or about December 12, 1995, Joyce and Spear Wilderman "induced [Local 1332 president Blackwell and Local 1332 financial secretary Warren Robinson] to execute and deliver to Spear Wilderman a note in the amount of $53,578.40 purportedly in payment of attorneys fees for services rendered to the local in litigation including the case brought by Local 1332 against the ILA." (Amended Complaint ¶ 22) ILA further alleges that the note "authorizes the confession and entry of judgment against the local for the sum of the note and agrees to the sale of the local's real estate on writ of execution." *Id.*

The core of ILA's complaint is that these actions violated Joyce's, Spear Wilderman's and Blackwell's fiduciary duties to Local 1332 as spelled out in 29 U.S.C. § 501(a). The core of Joyce and Spear Wilderman's motion to dismiss is that this case presents both the wrong plaintiff and the wrong defendants, i.e., that § 501 does not permit an action brought by a labor organization (which is what ILA is), nor does it permit an action brought against private attorneys providing representation to a labor organization. After reviewing the arguments made by the parties in their briefs and at oral argument, as well as the relevant case law, I am persuaded that

---

1. Defendant Blackwell did not answer or otherwise respond to the complaint. Default was entered against Blackwell on October 24, 1997.

2. The lawsuit, docketed as civil action no. 95–6832 and assigned to me, alleged that the revocation violated several provisions of the ILA constitution, and that the action was taken in retaliation for exercise of protected speech rights by Local 1332's president Blackwell. The suit was brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(2), 411(a)(5), 501 and

529. On November 14, 1995, I granted plaintiff's motion for a temporary restraining order. Pursuant to a temporary agreement of the parties, I entered an order providing that ILA would not interfere with Local 1332' s conducting of business or operation of its hiring hall. After several extensions of the preliminary injunction, the parties entered into a settlement agreement in February, 1996, which resolved all claims in the lawsuit. The actions at issue in the current lawsuit allegedly took place during the pendency of the earlier action, while the preliminary injunction was in force but before the final settlement was reached.

defendants are correct as to their first argument: that § 501 does not confer subject matter jurisdiction over plaintiff's claims brought against defendants for breaches of fiduciary duty.[3] I will therefore grant the motion to dismiss.

## II. Discussion

### A. *Motion to Dismiss under Fed.R.Civ. P.12(b)(1)*

The first ground asserted in defendants' motion to dismiss is jurisdictional. Thus, I should examine the allegations "and satisfy [myself] as to the existence of [my] power to hear the case." *Boyle v. Governor's Veterans Outreach and Assistance Center,* 925 F.2d 71,74 (3d Cir.1991), quoting *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977). The plaintiff, as the party asserting jurisdiction, has the burden of proving that jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

Plaintiff is a labor organization, as that term is defined in the LMRDA, 29 U.S.C. § 402(i). (Amended Complaint at ¶¶ 3–5,16,-36) What I am asked to determine at this stage of the proceedings is the legal significance of that identity in the context of a § 501 suit. If plaintiff is correct that § 501 implies a right of action for labor organizations to sue in federal court for breach of fiduciary duty, and more specifically, that § 501 confers a right for an international union to sue in federal court for breach of fiduciary duty by a local union officer, then plaintiff has adequately established that I have jurisdiction. If, on the other hand, moving defendants are correct as to either of their arguments, then I have no power to hear the claims against them, and this action must be dismissed against them.

### B. *Jurisdiction under 29 U.S.C. § 501*

The relevant portions of section 501 of the LMRDA provide:[4]

(a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws, and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization. . . .

(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial

---

**3.** Because I have determined that I do not have subject matter jurisdiction to hear ILA's claims brought under § 501, I need not reach the second issue raised in the motion to dismiss: whether § 501 confers subject matter jurisdiction over a claim against defendants Joyce and Spear Wilderman, i.e., whether they fall within the category of persons who may be liable under § 501 as "officers, agents, shop stewards or other representatives" of a labor organization.

**4.** Section 501 also contains a subsection c) which provides for criminal penalties for embezzlement of union funds.

judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

29 U.S.C. §§ 501(a) and (b).

◼ Subsection (a) establishes the fiduciary duties of officers, agents, shop stewards and representatives of labor organizations. Subsection (b) both creates and limits a cause of action for a member to recover damages caused by an officer, agent, shop steward or representative's breach of the duties established in subsection (a). A union member seeking to sue under § 501(b) must

meet two statutory prerequisites: he or she must first request that the union or its governing officers bring an action, and allege that the union refused or failed to do so, and then must request leave of court to bring the action.[5] Thus, a § 501(b) action is analogous to a shareholder's derivative suit; a union member brings the action in the name of the organization, to recover damages belonging to the membership as a whole. *See Building Material and Dump Truck Drivers, Local 420 v. Traweek,* 867 F.2d 500 (9th Cir.1989).

◼ The plain language of the statute reveals that § 501(b), "by its terms, does not establish a private right of action for a union itself." *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 375, n. 16, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).[6]

**5.** I use "union" interchangeably with "labor organization."

**6.** *Guidry* was not an LMRDA case, but an ERISA case in which a former union officer, who pled guilty to embezzling union funds, brought an action under Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) after the pension fund denied him benefits because of his criminal conduct. The union intervened in the action, seeking to have a constructive trust placed on the officer's pension benefits to compensate the union for its losses. The Supreme Court held that the anti-alienation provisions of ERISA operated to override the remedial provisions of the LMRDA, so as to prevent the imposition of a constructive trust. The Supreme Court, in a footnote, noted the conflict among the lower courts regarding whether a union itself could bring a 501 action, but declined to resolve it. The text of the footnote reads in pertinent part:

FN16. Section 501(b), 29 U.S.C. § 501(b) (1982 ed.), by its terms, does not establish a private right of action for a union itself. Rather, it provides that a suit may be brought in district court by a union member when a union officer is alleged to have breached his duties "and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization." That language certainly contemplates that a union may bring suit against its officers in some forum, but it does not expressly provide an independent basis for federal jurisdiction. Courts have reached inconsistent positions on the question whether a union may bring suit under § 501.... We need not resolve that question here. Rather, we assume, without deciding, that a union may invoke the remedial provisions of § 501(b). Uncertainty as to the scope of § 501(b) does not call into question the subject-matter juris-

diction of this Court or of the District Court and the Court of Appeals. This suit properly was brought by petitioner under § 502 of ERISA to recover benefits allegedly due him under the pension plans. 29 U.S.C. §§ 1132(a)(1)(B) and 1132(e) (1982 ed.).

*Id.* (citations omitted).

In *Guidry*, the union had settled its § 501 claim against Guidry before the case was submitted for decision, so there was no § 501 claim before the court. The fiduciary duties spelled out in § 501(a) of the LMRDA and the remedial provisions of § 501(b), as a basis for imposing a constructive trust on Guidry's retirement benefits, were apparently first raised before the Supreme Court. Footnote 16 of *Guidry*, therefore, raises the question of whether a union which is otherwise properly in federal court, may invoke § 501(a) and/or (b) as a source of relief. A positive answer to this question would not change the outcome in the instant case, since the only federal claim over which I arguably have subject matter jurisdiction, ILA's claim against Blackwell under 29 U.S.C. § 185, for breach of the ILA constitution, does not require reference to § 501. In other words, in determining whether Blackwell breached some duty he had under the ILA constitution, I need refer only to the constitution for the source of that duty. In contrast, in *Guidry*, the union asked the court to place a constructive trust on Guidry's pension benefits, and invoked § 501 as a source of its entitlement to that relief.

Courts that have found subject matter jurisdiction for a § 501 suit by a union post-*Guidry* have either disregarded *Guidry* entirely, e.g.,*Teamsters, Chauffeurs Local 764 v. Greenawalt,* 919 F.Supp. 774 (M.D.Pa.1996), *affirmed in part and vacated in part,* 116 F.3d 470 (3d Cir.1997), or have not considered the footnote 16 language dispositive, e.g., *Intern. Union v. Statham,* 97 F.3d 1416, 1418 (11th Cir.1996); *Intern. Longshoremen's Ass'n, Local 1624 v. Virginia Interna-*

Nor is there any dispute that the language of § 501(b) "contemplates that a union may bring suit against its officers in some forum, but it does not expressly provide an independent basis for federal jurisdiction." *Id.* The lower courts considering the issue presented here, i.e., whether a federal cause of action brought by a union itself may be implied from the text and/or purpose of § 501, have reached differing conclusions,[7] and the Third Circuit has not ruled on the issue.[8]

Defendants rely principally on the Ninth Circuit's ruling in *Building Material and Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir.1989), as well as several district court cases, which held that § 501 did not create a federal cause of action for a labor organization to sue for breach of fiduciary duty by a union officer. Plaintiff responds by pointing out that courts addressing this issue recently, including the Eleventh Circuit in *International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO*

*v. Statham*, 97 F.3d 1416 (11th Cir.1996) and this court, in *Morris v. Scardelletti*, 148 L.R.R.M. 2995 (E.D.Pa.1995)(Weiner, J.), have concluded that federal jurisdiction does exist.[9] I am not persuaded, however, that *Statham* and the other cases finding a right of action can be reconciled with the language of the statute, its legislative history and purpose, or this circuit's jurisprudence regarding the proper construction of the LMRDA specifically and implied rights of action generally.

As noted, the two appellate courts to consider whether § 501 grants jurisdiction over suits brought by unions themselves, reached different conclusions. The Ninth Circuit, in *Building Material and Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir.1989), held that 501(b) only confers jurisdiction on a suit brought by a union member, not by the union itself. The court stated:

> The literal language of the statute is clear—it authorizes an individual union member to bring suit if a union refuses or

---

*tional Terminals, Inc.*, 914 F.Supp. 1335, 1339 (E.D.Va.1996); *Morris v. Scardelletti*, 148 L.R.R.M. 2995 (E.D.Pa.1995); *Operative Plasterers and Cement Masons v. Benjamin*, 776 F.Supp. 1360, 1364 (N.D.Ind.1991). To the extent that *Guidry* may be read to provide direction regarding a union's ability to invoke the provisions of § 501(a) and/or (b), my ruling today is not in conflict with it.

7. Cases finding no jurisdiction for § 501 suits brought by unions are *Building Material and Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir.1989); *Local 443, IBT v. Pisano*, 753 F.Supp. 434, 436 (D.Conn.1991); *Local 191, IBT v. Rossetti*, 1990 WL 128241 (D.Conn.); ·*International Broth. of Boilermakers v. Freeman*, 683 F.Supp. 1190 (N.D.Ill.1988); *Crosley v. Katz*, 131 L.R.R.M. 2175 (E.D.Pa.1988); *Local 624, IUOE v. Byrd*, 659 F.Supp. 274 (S.D.Miss.1986); *Truck Drivers v. Baker*, 473 F.Supp. 1120 (M.D.Fla.1979). Cases finding a cause of action for unions under § 501 include *International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO v. Statham*, 97 F.3d 1416 (11th Cir.1996); *Intern. Longshoremen's Ass'n, Local 1624 v. Va. International Terminals, Inc.*, 914 F.Supp. 1335 (E.D.Va.1996); *Morris v. Scardelletti*, 148 L.R.R.M. 2995 (E.D.Pa.1995); *Operative Plasterers & Cement Masons v. Benjamin*, 776 F.Supp. 1360 (N.D.Ind. 1991); *Glenn v. Mason*, LEXIS Genfed Lib., Dist. File, No. 79 Civ. 3918 (S.D.N.Y. August 18, 1980); *Brotherhood of Railway, Airline and Steamship Clerks v. Orr*, 95 L.R.R.M. 2701 (E.D.Tenn.1977).

8. In *Local 1498, American Federation of Government Employees v. American Federation of Government Employees AFL–CIO*, 522 F.2d 486, 489, n. 2 (3d Cir.1975), the court noted that because the district court had denied leave to sue on jurisdictional grounds (government is not "employer" within meaning of LMRDA, therefore union of government employees not covered), "the issue of standing and of the propriety of naming the local union itself as a party plaintiff was not reached. We consequently express no opinion as to these issues." In *Local No. 1 (ACA) Broadcast Employees of IBT et al. v. IBT et al.*, 614 F.2d 846 (3d Cir.1980), the court affirmed a denial of a preliminary and permanent injunction sought to block the merger of two locals, which merger allegedly violated IBT's fiduciary obligations under § 501. The court did not address the propriety either of Local 1 being a plaintiff or IBT being the defendant in a § 501 suit, but, as in *Guidry*, § 501 does not appear to have been the jurisdictional basis for the suit. In *Loretangeli v. Critelli*, 853 F.2d 186 (3d Cir.1988), the court noted, in passing, that the plaintiff-appellants were "members of Local 194, New Jersey Turnpike Employees' Union, and the Local itself...." Since the issue was not addressed, although jurisdictional, I must assume it was neither raised by the parties nor addressed by the court in that case.

9. As discussed more fully below, the cases that have permitted labor organizations to bring § 501 actions have not anchored jurisdiction on § 501(b), but on the duties created by § 501(a) and general federal question jurisdiction.

fails to sue. The condition precedent to the filing of a § 501(b) suit requires proof that the union refuses or fails to sue upon a demand made by a union member. Here, by contrast, the union maintains a right to sue to recover its own funds; therefore it does not need the consent of the court or the operation of § 501 to sue for recovery. In [*Phillips v. Osborne,* 403 F.2d 826 (9th Cir.1968)] we discussed the policies and rationale behind the enactment of § 501(b). There we noted that the concept of union democracy can be analogized to shareholder democracy, including the ability to bring derivative suits on behalf of the corporation. Thus, in § 501(b) actions, the individual member acts in a representative capacity for the benefit of the union and on behalf of the union. A plaintiff in a § 501(b) action cannot seek to recover damages personally, but must seek a remedy for the union as a whole.

Thus, Congress included a requirement that the individual member request leave of the court to bring suit because any money lost through financial impropriety does not belong to the union member personally. This statutory requirement offers proof that Congress intended this remedy be available solely to individual union members.

*Id.* at 506.

See also *Local 443, IBT v. Pisano,* 753 F.Supp. 434, 436 (D.Conn.1991)("... § 501 requires that the union member first request that the union, in state court or pursuant to another federal statute, sue the union official ... before the member is permitted to bring suit under § 501."); *Local 191, IBT v. Rossetti,* 1990 WL 128241 *2 (D.Conn.)("[§ 501] does not permit a union to sue its officials in federal court."); *International Brotherhood of Boilermakers v. Freeman,* 683 F.Supp. 1190, 1192 (N.D.Ill.1988)("The plain language of § 501(b) leaves no doubt that only members are authorized to sue.")

The courts deciding *Traweek, Pisano, Rossetti,* and *Freeman* did not consider whether a cause of action for a union might be implied from the duties laid out in § 501(a), consistent with the general intent behind § 501. Rather, they started from the "general principle ... that the scope of federal jurisdictional statutes should be construed narrow-

ly", *Traweek* at 507, and the more specific "federal policy of noninterference in the internal affairs of unions and labor matters", *id.* at 506. As a result, they found no support for subject matter jurisdiction for a § 501 suit brought by a union itself.

On the other hand, the Eleventh Circuit, in *IUE v. Statham,* 97 F.3d 1416 (11th Cir. 1996), held that a union may assert a federal cause of action under § 501, despite the fact that § 501(b) does not itself confer jurisdiction over suits by unions. The court interpreted the legislative history of § 501 as follows:

We conclude that it would in fact frustrate congressional intent to relegate the union to state remedies. The legislative history of the LMRDA shows that Congress enacted the fiduciary provisions of § 501 because existing state law remedies for union officials' misconduct were inadequate. The Senate report contains a minority statement complaining about the lack of fiduciary provisions in the Senate bill: "Only one state has enacted a statute imposing fiduciary obligations on union officials and giving union members a right to sue in the event of any breach thereof." The LMRDA as passed contains broader fiduciary obligations than the Senate bill.

*Id.* at 1420 (citation omitted).

As a result, the court held that the union could invoke the court's general federal question jurisdiction, arguing that it made no sense to require a union member to first request that the union bring an action to recover for breaches of fiduciary duties, and then deny the union a forum to do so. *Id.* at 1421 ("...reading section 501(a) as providing a cause of action for individual union members, but not for the union itself, would encourage the unions to refuse their members' requests to sue offending officials.").

Similarly, the lower court cases which allowed a union to bring a § 501 claim, acknowledge that jurisdiction cannot be grounded on § 501(b) itself, but conclude that it is implied by the duties laid out in § 501(a). *See, e.g., Morris v. Scardelletti,* 148 L.R.R.M. 2995 (E.D.Pa.1995), relying on *Operative Plasterers & Cement Masons v. Benjamin,* 776 F.Supp. 1360, 1365 (N.D.Ind.

1991) ("Properly read, § 501(a) creates a cause of action in favor of labor organization against officials who breach their duties to the organization"); *Glenn v. Mason*, LEXIS Genfed Lib., Dist. File, No. 79 Civ. 3918 (S.D.N.Y. August 18, 1980); *Brotherhood of Railway, Airline and Steamship Clerks v. Orr*, 95 L.R.R.M. 2701 (E.D.Tenn.1977).

While the arguments put forth in *Statham* et al. may have an initial common sense appeal, they ultimately fail to persuade me that such an expansive reading of the statute is justified. Neither the report quoted by the *Statham* court, nor anything else in the text or legislative history of the LMRDA, reveals a concern for unions themselves having access to federal court.

The LMRDA was enacted after hearings and reports overseen by the Senate Select Committee on Improper Activities in the Labor Management Committee ("the McLellan committee"), and represents an accommodation between two competing federal policies: noninterference in the internal affairs of unions and labor matters, and empowerment of individual union members within their unions. *See e.g., Phillips v. Osborne*, 403 F.2d 826, 828–30 (9th Cir.1968) (discussing legislative history of LMRDA). "The Labor Management Reporting and Disclosure Act was based, in part, on a congressional finding 'from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct ....' " *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 1947, 36 L.Ed.2d 702 (1973), quoting 29 U.S.C. § 401(b). The McLellan committee concluded that "[m]uch that is elicited in the Committee's findings of misconduct by union officials can be substantially improved ... by a revitalization of the democratic processes of labor unions." *Phillips*, 403 F.2d at 828, quoting *Interim Report of the Select Committee on Improper Activities in the Labor Management Field*, S.Rep.No. 1417, 85th Cong.,2d Sess., 452(1958).[10]

Thus, the LMRDA is in large measure an entitlement statute for union members, creating democratic rights within the union, and providing access to federal court to vindicate those rights *as against their union leadership*.[11]

It is against this backdrop that I evaluate ILA's claim that finding a cause of action for a union to bring suit under § 501 comports with congressional intent. *Statham* and the lower court cases finding jurisdiction for a union § 501 action reasoned that the language of § 501(b) requiring that a union member first demand that the union sue or recover damages before initiating suit, while not itself granting jurisdiction, clearly evinces Congress' preference that the union itself bring an action for breaches of fiduciary duty by its officers.[12] *See,e.g., Intern. Longshoremen's Ass'n, Local 1624 v. Virginia International Terminals, Inc.*, 914 F.Supp. 1335, 1339(E.D.Va.1996); *Benjamin* at 1365.[13] I am more persuaded, however,

---

**10.** The exhaustive legislative history undertaken by the court in *Phillips* also includes this comment from committee member Senator Curtis:

> It is my firm belief that if the real power in a union is vested in the rank and file of its members, that accomplishment alone will eliminate a great portion of all the abuses and misuse of funds and misuse of power and the other offenses which all of us must frown on. *Id.* at 828, n. 3, quoting 105 Cong.Rec.5862 (daily ed. April 23, 1959).

**11.** See, e.g., 29 U.S.C. § 102 (federal cause of action for union members to sue for violations of LMRDA bill of rights provision); § 304 (investigation by the Secretary of Labor into violation of trusteeship provisions, upon the written complaint of any member); § 402(investigation by Secretary of Labor into violation of election provisions, upon the written complaint of any member).

**12.** In reaching this conclusion, the court in *Statham*, as quoted earlier, relied on a Senate report which decried the lack of state remedies for union *members*, not unions. See *Id.* at 1420, quoting S.Rep.No.187, 86th Cong., 1st Sess. reprinted in 1959 U.S.C.C.A.N. 2318, 2376.

**13.** *Intern. Longshoremen's Ass'n, Local 1624* and *Benjamin* relied on language found in *Weaver v. United Mine Workers of America*, 492 F.2d 580, 586–7 (D.C.Cir.1973), in which the court allowed the substitution of the union (after change in leadership) for the individual union member as plaintiff in a § 501 action. The court in *Weaver* impliedly found jurisdiction for a § 501 claim prosecuted by a union, but did not directly address the issue. Since the action in *Weaver* was initiated by a union member (subsequently murdered), and since individual members remained as co-plaintiffs, I conclude that my ruling is not in conflict with *Weaver*.

by the reasoning of those cases which have interpreted the prerequisites for a member to commence litigation under § 501(b) as indicative of congressional intent to limit frivolous or harassing litigation by union members. *See, e.g., Sabolsky v. Budzanoski,* 457 F.2d 1245, 1253 (3d Cir.), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); *Dinko v. Wall,* 531 F.2d 68, 73 (2d Cir.1976); *Pawlak v. Greenawalt,* 464 F.Supp. 1265,1269 (M.D.Pa.1979); *Safe Workers' Organization v. Ballinger,* 389 F.Supp. 903, 908 (S.D.Ohio 1974).[14]

Although the Third Circuit has not directly addressed the issue I decide today, its decisions interpreting other provisions of § 501, other provision of the LMRDA, as well as its general directives regarding implied rights of action, inform my decision. In *Sabolsky,* the court adopted a liberal reading of the "demand" requirement of § 501(b), holding that a union member bringing the breach of fiduciary duty to the union's attention was sufficient. 457 F.2d 1245. In *Loretangeli v. Critelli,* 853 F.2d 186 (3d Cir.1988), the court adopted a broad interpretation of the "good cause" requirement of § 501(b) in holding that the trial court could find good cause for a member's claim on the basis of the verified complaint, and was not to consider defenses which would require resolution of complex questions of law or disputed issues of fact.

Both these rulings are consistent with the legislative scheme of empowering individual union members, as well as with the language of § 501(b).

In *Local No.1. Broadcast Employees of the IBT et al. v. IBT et al.,* 419 F.Supp. 263 (E.D.Pa.1976)(denial of preliminary injunction), 461 F.Supp. 961 (E.D.Pa.1978)(final judgment), *affirmed in relevant part,* 614 F.2d 846 (3d Cir.1980), authored by then-District Court Judge Becker, the court considered whether a local union could bring an action against its international union under § 412 of the LMRDA, and, by implication, under § 501.[15] The court interpreted "person" as used in § 412 to include a local union which is itself a member of an international union. *Id.* at 271–2. The reasoning of *Local No. 1* affirms that the focus of the LMRDA is on the rights of *members,* whether individual members of local labor organizations, or local members of international labor organizations.

The decision in *Local No. 1* is not in conflict with my decision today, as ILA, the plaintiff in this case, is not a "member of a labor organization" under the LMRDA. Even if I were to consider the real party in interest in this case to be Local 1332 (which had ceased to exist at the time the suit was filed), it is not suing an officer of a labor

---

14. There is some evidence that Congress considered and rejected the possibility of creating federal jurisdiction for § 501 actions brought by unions themselves. An earlier draft of the bill which became the LMRDA, S.748, included a provision that read as follows:

301(b) An action or proceeding may be maintained in any court of competent jurisdiction for an accounting or other appropriate relief with respect to any act or omission of any officer, agent or other representative of a labor organization which is in disregard of the duty set forth in this section.
Such action or proceeding may be maintained by one or more of the principal officers of such labor organization in behalf of the members thereof, or by any or more of the members of the labor organization for and in behalf of himself or themselves and other members similarly situated, or by an agent or representative designated by any such member or members to maintain such action or proceeding for and on behalf of all members similarly situated.
S.748, § 301(b), reported in National Labor Relations Board, *Legislative History of the Labor–*

*Management Reporting and Disclosure Act of 1959,* Vol.I at p. 109 (1959)
This section, which was not adopted, contains no explicit grant of federal jurisdiction for anyone, neither rank and file members nor officials. The analogous section that was adopted, § 501(b), explicitly grants federal jurisdiction to suits by union members, conditioned on the failure of the union itself to sue, and on receiving leave of court to do so. This implies that the drafters considered granting federal jurisdiction to suits by union officials, but chose not to do so. *Crosley v. Katz,* 1988 WL 94283 (E.D.Pa.) (non-adoption of § 301(b) of S.748 leads court "to conclude that Congress intentionally drafted § 501(a) and (b) so as to preclude suits by unions or their officers.")

15. The jurisdictional basis for the lawsuit in *Local No. 1* was 29 U.S.C. § 412, which permits a "person" to bring an action in federal court for violations of rights protected by § 411 (the LMRDA "bill of rights" provision). As in *Guidry,* § 501 was not the jurisdictional basis for the suit, but was raised as one source of the duty allegedly breached.

organization of which it itself is a member; rather, it is suing its own former officer (and attorneys).

Moreover, both the Supreme Court and the Third Circuit have given unambiguous directives regarding implied rights of action. In *American Tel. & Tel. Co. v. m/v Cape Fear et al.*, 967 F.2d 864 (3d Cir.1992), the Court of Appeals reversed the district court's ruling that the Cable Act, which provides criminal penalties for damaging a submarine telecommunications cable, creates a private civil cause of action.

The language at issue in *Cape Fear* was "the penalties provided in this chapter for the breaking or injury of a submarine cable shall not be a bar to a suit for damages on account of such breaking or injury." *Id.* at 867, quoting 47 U.S.C. § 28. The Third Circuit determined that this language meant only that the penalties cannot prohibit a civil remedy, but that plaintiff must find a private remedy elsewhere.[16] In reaching this conclusion, the court of appeals applied the four-part test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to conclude that no private right of action could be implied.

The *Cort* test is as follows:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Fourth,] is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* 422 U.S. at 78(citations omitted).

If I apply the *Cort* test to this case, I conclude that no right of action for unions may be implied. As to the first question, as discussed above, it is union members, not unions themselves, for whose especial benefit the statute was enacted; § 501(b) explicitly creates a federal right in favor of union members. Although it refers to a union "or its governing board or officers refus[ing] or fail[ing] to sue or recover damages or secur[ing] an accounting or other appropriate relief", it does not specify the forum for such action. A union member is entitled to "sue" under this section, if the union fails to "sue *or* recover damages" (emphasis added); this implies that a labor organization might pursue a remedy in a non-judicial forum, i.e., charges brought pursuant to the union's constitution.

The second question, whether there is any indication of legislative intent to create or deny such a remedy, must also be answered in the negative, as evidenced by the legislative history previously reviewed. There is no indication that Congress intended to create a remedy for a union to sue under § 501; there is some (albeit inconclusive) evidence that Congress intended to deny such a remedy.[17]

Nor is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. As previously discussed, while § 501(b) contains safeguards to prevent a union member from using the section to harass union leadership, no such safeguard exists if a right of action is implied for a union. As a result, a jurisdictional grant to a union plaintiff would fail to balance the competing legislative interests in

---

**16.** The court relied on *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), a case in which plaintiff attempted, as ILA attempts here, to derive a private right of action from a statutory section imposing duties. (In *Touche Ross*, the section at issue was § 17(a) of the Securities and Exchange Act, which imposes recordkeeping duties. In this case, ILA seeks to derive a cause of action from the fiduciary duties spelled out in § 501(a) of the LMRDA.) Plaintiff in *Touche Ross* contended that a private right of action could be implied from the remedial purposes of the statute and from its jurisdictional provision. The Supreme Court rejected both contentions, ruling that the general jurisdictional provision of the Securities and Exchange Act "creates no cause of action of its own force and effect..." *id.* 442 U.S. at 577, and that "the mere fact that § 17(a) was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf." *Id.*

**17.** See footnote 14.

enhancing union democracy on the one hand, and in noninterference with internal union affairs on the other. Such a jurisdictional grant would at least present the potential for harassing litigation by a union against a dissident officer, or by an international union against a dissident local, in direct conflict with the legislative scheme.

The fourth factor, state versus federal concern, is less clear, but still does not point to a different outcome. While labor law is, in most respects, an area of exclusive federal concern, the claims sought to be asserted here are at bottom, state law issues of fraud, unjust enrichment and breach of contract.[18]

Thus, the inevitability of finding a federal cause of action for a union to bring a § 501 action is simply not supported by the language or purpose of the statute. As the Third Circuit was persuaded in *Cape Fear* that a right of action could not be implied from the language or purpose of the Cable Act, I am also persuaded that a right of action for a union under § 501 may not be implied from the statute or its purpose.

ILA argues that it makes no sense to deny a federal forum to a labor organization to recover for breaches of fiduciary duty by its officers, agents, shop stewards or other representatives when such duties are created by federal law. I am not convinced that it makes no sense, as the provision of a remedy for unions was simply not the focus of the legislation, as noted in the sections of the statute and its legislative history earlier cited. Moreover, the union has adequate remedies under state law (notably the supplemental state claims brought in this action, for fraud, breach of contract, breach of fiduciary duty, and unjust enrichment). If the union did not pursue the state claims, a member of ILA could bring an action under § 501(b) to recover damages caused by defendants' alleged breach of fiduciary duty. In any event, it is for Congress to create federal jurisdiction where none exists.

*Remaining Claims*

As noted earlier, I need not decide whether § 501 confers federal subject matter jurisdiction over an action brought against private attorneys for breach of the fiduciary duty owed by "officers, agents, shop stewards or other representatives" of a labor organization. The only federal claims ILA raised against defendants Joyce and Spear Wilderman were under § 501. Joyce and Spear Wilderman, however, also argue that the remaining federal claim, asserted solely against Blackwell, fails to state a claim. Although they do not represent Blackwell, it is in their interest to have this claim dismissed, as there will then be little or no justification for retaining supplemental jurisdiction over the state claims.

Blackwell has not responded to the complaint or otherwise entered an appearance in this action. Default was entered against Blackwell on October 24, 1997. Since I have ruled that I do not have subject matter jurisdiction over claims brought by ILA under § 501, no default judgment can be entered on its § 501 claims against Blackwell. The remaining federal claim against Blackwell is brought under section 301 of the Labor Management Relations Act 29 U.S.C. § 185, for breach of the ILA constitution, specifically its statement of purpose. That claim, which seeks equitable relief in the form of restitution of salary paid to Blackwell during the period when he was allegedly violating his duty to act in the best interests of Local 1332, presents an arguable basis for subject matter jurisdiction. Since Blackwell is in default, any non-jurisdictional attacks on the sufficiency of the claim are waived. When plaintiff moves for entry of default judgment on this claim, and supplies affidavits or other evidence from which restitution may be determined, I will determine the appropriate relief.

ILA has also brought state law claims for fraud (against all defendants), breach of contract (against Blackwell), unjust enrichment(against all defendants) and breach of fiduciary duties (against all defendants). I shall retain supplemental jurisdiction over ILA's claim for breach of contract and unjust enrichment against Blackwell, as they involve

---

**18.** Although I have gone through all four parts of the *Cort* test, the Supreme Court, in *Touche Ross,* stated that if the first two criteria did not indicate a right of action, the remaining two "cannot by themselves be a basis for implying a right of action." 442 U.S. at 580 (Brennan, J., concurring).

identical facts, and seek identical relief, as the § 301 claim. I shall decline to exercise supplemental jurisdiction over the remaining state law claims against Blackwell, Joyce and Spear Wilderman, as they are not sufficiently related to the remaining federal claim to warrant supplemental jurisdiction. No discovery has taken place, and resolution of these claims in state court will best serve judicial economy.[19] An appropriate order follows.

### ORDER

AND NOW, this 20th day of February 1998, upon consideration of defendants Joyce and Spear Wilderman's motion to dismiss, plaintiff ILA's response in opposition, moving defendants' reply brief and ILA's sur-reply brief, and after oral argument, **IT IS ORDERED THAT** defendants Joyce and Spear Wilderman's motion is **GRANTED,** for the reasons stated in the accompanying memorandum.

1) Counts One, Two, Three, Four and Five of the Amended Complaint are **DISMISSED WITH PREJUDICE** against all defendants, for lack of subject matter jurisdiction.

2) Counts Seven, Nine (against defendants Joyce and Spear Wilderman only) and Ten are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

3) I retain jurisdiction over Counts Six, Eight and Nine (against defendant Blackwell only). Plaintiff shall, within 10 days of the date of this order, submit its application for entry of default judgment against Blackwell on these claims, together with affidavits enabling the court to determine the amounts due.

---

[19]. ILA argues that I should retain jurisdiction over all the state claims because, it argues, Joyce and Spear Wilderman are necessary parties to any determination of damages resulting from Blackwell's alleged misconduct. However, there is no connection between the state law allegations regarding Joyce and Spear Wilderman and those underlying the only remaining federal claim—that Blackwell breached the ILA constitution. An entry of default judgment against Blackwell on this claim or the related state claims, based on affidavits or after a damages hearing, has no impact on Joyce and Spear Wilderman's rights or liabilities with regard to the judgment note or the real estate at issue in this case. Paragraph 7 of the Agreement and Consent Order(Docket # 11) in this case provides for the maintenance of the escrow funds(in the amount of the judgment note) during the pendency of a state court action, in the event that the claims against Joyce and Spear Wilderman are dismissed on jurisdictional grounds.